ERIC MECKLEY, State Bar No. 168181
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001
E-Mail: emeckley@morganlewis.com

NANCY VILLARREAL, State Bar No. 273604
MORGAN, LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306
Tel:    +1.650.843.4000
Fax:   +1.650.843.4001
E-Mail: nvillarreal@morganlewis.com

Attorneys for Defendant
UNISYS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FADI SABA,<br><br>               Plaintiff,<br><br>     vs.<br><br>UNISYS CORPORATION,<br><br>               Defendant. | Case No. 3:14-cv-01310-WHO<br><br>**DEFENDANT UNISYS CORPORATION'S RESPONSE TO PLAINTIFF FADI SABA'S OBJECTIONS TO DEFENDANT'S BILL OF COSTS**<br><br>Complaint Filed: February 27, 2014 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

# TABLE OF AUTHORITIES

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. Fed. R. C. Pro Rule 54 Creates a Strong Presumption in Favor of Awarding Costs to the Prevailing Party ................................................................................. 1

    B. Enforcement of Unisys' Bill of Costs Will Not Result in Any Injustice ................ 2

    C. The Court Found Saba Failed to Offer Any Evidence Disputing Unisys' Legitimate Non-Discriminatory, Non-Retaliatory Reasons for His Layoff ............ 4

    D. Unisys' Bill of Costs is Proper and Unisys' Documented Costs Should Be Allowed .................................................................................................................. 6

        1. Unisys Should Be Reimbursed for Fees for Service of Subpoenas ............ 6

            a. Private Process Servers' Fees Are Taxable In The Ninth Circuit ................................................................................................. 6

            b. Unisys' Subpoenas Were Necessary and Proper ............................ 7

        2. Unisys Should be Reimbursed for Transcript and Videotaping Costs ........ 9

        3. Unisys Should be Reimbursed for Witness Travel Fees ........................... 12

        4. Unisys Should be Reimbursed for Copying Costs .................................... 13

    E. The Court Should Not Defer Ruling on Defendants' Bill of Costs Pending Appeal ................................................................................................................. 14

III. CONCLUSION .................................................................................................................... 15

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

i

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alflex Corp. v. Underwriters Labs., Inc.*,
914 F.2d 175 (9th Cir. 1990) .................................................................................................. 6

*ASIS Internet Servs. v. Optin Glob., Inc.*,
C-05-5124 JCS, 2008 WL 5245931 (N.D. Cal. Dec. 17, 2008) *aff'd sub nom. ASIS Internet Servs. v. Azoogle.com, Inc.*, 357 F.Appx 112 (9th Cir. 2009) ............................ 10, 12

*Ass'n of Mexican-Am. Educator v. State of Cal.*,
231 F.3d 572 (9th Cir. 2000) .................................................................................................. 5

*Dep't of Fair Emp. & Hous. v. Lucent Tech., Inc.*,
C 07-3747PJH, 2009 WL 1159181 (N.D. Cal. Apr. 29, 2009) ............................................... 2

*Ellis v. Grant Thorton LLP*,
434 Fed. Appx. 232 (4th Cir. 2011) ........................................................................................ 2

*English v. Coloro. Dept. of Corr.*,
248 F.3d 1002 (10th Cir. 2001) .............................................................................................. 5

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .............................................................................................................. 15

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
697 F.Supp. 2d 1139 (N.D. Cal. 2010) ................................................................................. 10

*Kilopass Tech. Inc. v. Sidense Corp.*,
C 10-02066 SI, 2013 WL 843104 (N.D. Cal. Mar. 6, 2013) ................................................ 15

*Marbled Murrelet v. Babbitt*,
No. C 95-3261 LCB, 1999 WL 193387 (N.D. Cal. Apr. 5, 1999)
*aff'd*, 182 F.3d 1091 (9th Cir. 1999) .................................................................................... 14

*MEMC Elec. Materials v. Mitsubishi Materials*,
No. C 01-4925 SBA (JCS), 2004 WL 5361246 (N.D. Cal. 2004) .......................................... 9

*Save Our Valley v. Sound Transit*,
335 F.3d 932 (9th Cir. 2003) .................................................................................................. 2

*Serv. Employees Int'l Union v. Rosselli*,
No. C 09-00404 WHA, 2010 WL 4502176 (N.D. Cal. Nov. 1, 2010) ............................ 11, 12

*Smith v. Southeastern Pa. Transp. Auth.*,
47 F.3d 97 (3d Cir. 1995) ....................................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sorgen v. City & Cty. of S.F.*,
  05CV03172, 2007 WL 521235 (N.D. Cal. Feb. 15, 2007) .......................................................... 2

*U.S. ex rel. Davis v. U.S. Training Ctr., Inc.*,
  829 F.Supp. 2d 329 (E.D. Va. 2011) ........................................................................................ 6

*Warwick v. Univ. of the Pac.*,
  C 08-3904 CW, 2012 WL 3114600 (N.D. Cal. July 31, 2012) ................................................. 4

*Washburn v. Fagan*,
  C03-00869, 2008 WL 361048 (N.D. Cal. Feb. 11, 2008) ..................................................... 4, 5

*Zopatti v. Rancho Dorado Homeowners Ass'n*,
  No. 10CV1091 DMS WVG, 2012 WL 92338 (S.D. Cal. Jan. 10, 2012) ......................... 10, 11

**STATUTES**

28 U.S.C.
  § 1821 ..................................................................................................................................... 12
  § 1920(1) .................................................................................................................................. 6
  § 1920(4) ................................................................................................................................ 14

29 U.S.C.
  § 1821(d)(1)-(3) ..................................................................................................................... 13

**RULES AND REGULATIONS**

Fed. R. Civ. P.
  54 ............................................................................................................................................. 1
  54(d) ............................................................................................................................... 1, 2, 11

Local Rule
  54-1(a) ............................................................................................................................. 10, 11
  54-1(b) ................................................................................................................................... 11
  54.1(b)(1) ............................................................................................................................... 11
  54-3(2) ..................................................................................................................................... 6
  54-3(d)(2) .............................................................................................................................. 14
  54(e) ....................................................................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

## I. INTRODUCTION

Defendant Unisys Corporation ("Unisys") timely submits this Response to Plaintiff Fadi Saba's ("Saba" or "Plaintiff") Objections to Unisys' Bill of Costs filed on July 31, 2015 ("Bill of Costs"), Dkt. 140. Saba's objections lack merit and should be overruled. As the prevailing party, Unisys is entitled to recover its costs and has submitted ample evidence that its costs were both reasonable and recoverable per statute and applicable case law.

Saba has failed to demonstrate any legitimate bases to disallow Unisys' costs and instead has relied upon his skewed perceptions of "relevance" to argument that costs actually incurred during the litigation should nonetheless be denied. As just one example, he asserts that only 38 minutes of his deposition and 2 minutes of Gary Greene's deposition were "relevant" and that, as a result, the $17,928.68 that Unisys incurred in deposition costs should be reduced to $213.10. Quite obviously, the Court found far more of Saba's deposition testimony "relevant" when it granted Unisys' motion for summary judgment and, in any event, the statute and case law does not allow for apportioning deposition costs based upon a losing party's perception of what testimony was relevant.

As another example, Saba asserts that he cannot pay Unisys' costs because he "is not able to pay even a fraction of these costs". His assertion lacks merit and is unsupported by the evidence. Saba earned a salary in the high five figures during his last several years of employment with Unisys and, for at least five years during that period was (unbeknownst to Unisys) also earning a six-figure salary from his second full-time job with Quest Software. (*see* Unisys's Opposition to Saba's Motion for Summary Judgment, Dkt. 102). Clearly, Saba is not an impoverished, minimum wage worker as he would have this Court believe. Saba provides no explanation as to how, despite earning almost $200,000 annually for at least 5 years (i.e., not far from $1 million in total), he now supposedly cannot pay approximately $22,000 in costs. Saba also obtained a generous settlement from Unisys when resolving his first lawsuit against Unisys. He has not provided any *evidence* of an inability to pay. Regardless, the applicable case law makes clear that Saba should not avoid being held responsible for statutorily awarded costs based upon his alleged financial condition.

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

1

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

Unisys addresses each of Saba's specific arguments herein.  The unavoidable conclusion is that Unisys incurred reasonable and necessary costs in having to defend Saba's meritless lawsuit, which his former counsel very aggressively litigated.  The evidence presented in Unisys' Bill of Costs, and the case law cited herein, demonstrates that Unisys should recover *all* of the costs claimed in its Bill of Costs.

## II.     ARGUMENT

### A.     Rule 54 Creates a Strong Presumption in Favor of Awarding Costs to the Prevailing Party

Costs are awarded pursuant to Federal Rule of Civil Procedure 54(d) and this Court's Local Rules as a matter of course to the prevailing party.  Rule 54(d) creates a strong presumption in favor of awarding costs to the prevailing party.  *Dep't of Fair Emp. & Hous. v. Lucent Tech., Inc.*, C 07-3747PJH, 2009 WL 1159181 *2 (N.D. Cal. Apr. 29, 2009).  Contrary to Saba's arguments, the ***losing party*** has the burden of overcoming this strong presumption by affirmatively showing a valid reason why the prevailing party is not entitled to costs.  *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-945 (9th Cir. 2003).  As illustrated below, Saba's showing is insufficient to overcome this presumption and Unisys' Bill of Costs should be awarded as originally requested.

### B.     Enforcement of Unisys' Bill of Costs Will Not Result in Any Injustice

Saba argues the Court should deny awarding any costs to Unisys because of his "limited financial resources."  *See* Saba's Objections to Unisys' Bill of Costs ("Saba's Opp."), Dkt. 146 at p. 2.  Saba cites one case from the Fourth Circuit Court of Appeals, *Ellis v. Grant Thorton LLP*, 434 Fed. Appx. 232, 235 (4th Cir. 2011) in support of his argument that when deciding whether to grant a party's motion to tax costs, this Court should consider five factors: "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided."  Saba's Opp., p. 1.  Not only is *Ellis* not binding on this court, it is distinguishable from the facts of this case.  *Ellis* involved a negligent misrepresentation claim against an accounting firm, and the prevailing defendant sought $60,000

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

for premiums paid on a *supersedeas* bond.  Here, in contrast, Unisys is not seeking to recover bond premium costs; rather, each and every cost claimed by Unisys is expressly authorized by statute and other applicable case authority.  Also, the plaintiff in *Ellis* was retired with diminished earning potential.  *Ellis*, 434 Fed. Appx. at 235.  Here, Saba is nowhere near retirement age and has significant earning potential given his technical skills and prior history of six-figure annual earnings.  *Ellis* is simply not analogous here.

In addition, case law makes clear that a litigant of modest financial means is not exempt from liability for statutorily awarded costs.  *Sorgen v. City & Cty. of S.F.*, 05CV03172, 2007 WL 521235, *3 (N.D. Cal. Feb. 15, 2007) (*citing Ardalan v. Monterey Inst. of Int'l Studies*, 2004 U.S. Dist. LEXIS 18765, *8 (N.D. Cal. 2004); *Smith v. Southeastern Pa. Transp. Auth.*, 47 F.3d 97, 100 (3d Cir. 1995) (holding that a losing party's inability to pay does not automatically exempt it from the taxation of costs).

Here, Saba has presented simply no admissible evidence to support his self-serving claims that he is unable to pay or that awarding these costs impose an unfair burden upon him.  Significantly, for at least five years from 2007 to 2011, Saba was, unbeknownst to Unisys, working a second full-time job while he was also employed full-time by Unisys.  During this time, Saba was making an annual salary in excess of $80,000 per year at Unisys, while earning more than six figures from his second employer Quest Software.  *See* Supplemental Declaration of Eric Meckley ("Meckley Supp. Decl."), ¶ 7, Ex. H; Declaration of Eric Meckley In Support of Defendant Unisys Corporation's Administrative Motion to File Under Seal, Dkt. 101-1, Exh. 27 [Lodged Under Seal].  In addition to earning six figure annual salaries over the course of multiple years, Saba received a settlement in January 2013 totaling $8,598.75 in connection with his prior lawsuit against Unisys.  *See* Saba's Settlement Agreement at Dkt. 87-2, Exh. 51 (Saba's Depo. Ex. 1046) at pp. 100-101.  Moreover, Saba admits he owns the property at 5829 Adeline St. in Emeryville, and in his reply in support of his motion for partial summary judgment, Saba conceded that he owns property in Harleysville, Pennsylvania.  Dkt. 75-1 pp. 2-3, ¶ 7.  Indeed, Unisys produced various official mortgage and deed documents reflecting Saba owns a house located at 557 Pioneer Circle, Harleysville, Pennsylvania.  *See* Dkt. 104, Exs. 17-22.  Clearly,

Saba has sufficient assets that may be used to pay the $22,000 he owes to Unisys.

Saba also has promising earning potential. Saba testified at his deposition that he was actively looking for employment, and his own expert opined that Saba could be expected to find other comparable employment by December 31, 2015. *See* Meckley Supp. Decl., ¶ 4, Ex. E.

In light of Saba's considerable earning history and his ability to work full time in the Bay Area – which is undergoing a tech boom – there is no absolutely no reason to believe that Saba would be unable to pay Unisys' costs over a period of time. *See Warwick v. Univ. of the Pac.*, C 08-3904 CW, 2012 WL 3114600 (N.D. Cal. July 31, 2012) (overruling plaintiff's motion to oppose costs based on determination that plaintiff failed to demonstrate that limited financial resources impeded her ability to pay costs *over time*) (emphasis added); *cf. Washburn v. Fagan*, C03-00869, 2008 WL 361048, *2 (N.D. Cal. Feb. 11, 2008) (declining to award costs where plaintiff argued he "lives '*hand to mouth*' and, in his appeal of this case, the Ninth Circuit approved his application to proceed in *forma pauperis*.) (emphasis added).

Although Saba filed an Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") (Dkt. 148), Saba failed to file a declaration under penalty of perjury in support of his Objections to Unisys' Bill of Costs setting forth admissible evidence regarding his current financial resources. Saba makes contradictory representations in his Application. Specifically, Saba claims he has not received any income, including gifts or "[a]ny other sources" in the past twelve months. Dkt. 148, p. 1. However, Saba claims that he received $38,000 from his "siblings and parents for support during this difficult time." *Id*., p. 2. Whether the $38,000 from his family was in the form of a gift or a loan, Saba should have disclosed this money in response to question three of the Application. *Id*., p. 1.

Saba's claim that he has not received any income in the last year is highly suspicious, particularly given that he claims to have four children, a mortgage and other outstanding loan obligations. *Id*. Saba could have submitted his W-2 Form from 2014 for the Court's consideration, given that such document is now currently available and would provide a more accurate reflection of Saba's most recent earnings and current ability to pay. He did not. As a result, Saba has failed to demonstrate that awarding costs against him would render him indigent

or otherwise result in any injustice.

### C. The Court Found Saba Failed to Offer Any Evidence Disputing Unisys' Legitimate Non-Discriminatory, Non-Retaliatory Reasons for His Layoff

Saba claims his "serious" claims of retaliation and whistleblowing were dismissed on "very close, difficult grounds." Saba's Opp., p. 8. He claims the Court should deny costs under such circumstances. However, while it is true that a Court has discretion to deny a cost award against an unsuccessful plaintiff where the issues were of the "gravest public importance," the costs "extraordinarily high," and where awarding the costs to the defendant "might have the regrettable effect of discouraging potential plaintiffs from bringing civil rights cases," this is simply not such a case. *See Ass'n of Mexican-Am. Educator v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000); *Washburn v. Fagan*, C03-00869, 2008 WL 361048, *2 (N.D. Cal. Feb. 11, 2008) (holding that imposing the bill of costs could cause a chilling effect because "[t]his action raised important issues regarding how the San Francisco Police Department dealt with, and supervised, excessive force incidents.").

Unlike *Association of Mexican-American Educators*, a case that potentially affected tens of thousands of Californians and the state's public school system, and *Washburn*, a case involving excessive force by police, this action involved an isolated incident and routine allegations of wrongful termination/retaliation by a single home-based employee that garnered no public/media attention and did not involve any issues of "public importance." Awarding costs in this matter will have absolutely zero potential to "chill" or deter any other potential plaintiffs from filing civil rights actions. *English v. Coloro. Dept. of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001) (upholding the "traditional presumption in favor of awarding costs, regardless of whether the prevailing party is a defendant in a civil rights case.").

Also, contrary to Saba's characterization of the issues presented as "dismissed on <u>very close, difficult grounds</u>," (Saba's Opp., p. 8) the record indicates otherwise. After extensive discovery and briefing, this Court found that Unisys' reasons for including Saba in a company-wide layoff were not *pretextual*. The Court stated:

Unisys gives three reasons for terminating Saba: he was unable to work for one of two main customers of the group within Unisys to which he was assigned; the group's other main customer reduced its contractual requirements from Unisys so that approximately 2 rather than 5 full-time employees were needed to service it; and Unisys itself suffered a financial reversal and terminated 54 employees, including Saba, in a reduction in force. ***Saba offers no evidence to dispute those reasons, and his evidence of pretext is weak to non-existent***.  Dkt. 137 at 1:22-28 (emphasis added).

Simply put, "weak to non-existent" evidence of pretext is not "very close, difficult grounds".  There is no reason for the Court to depart from the strong presumption and general rule of awarding costs to the prevailing party.

### D.     Unisys' Costs Are Reasonable, Proper and Should Be Allowed by the Court

#### 1.     Unisys Should Be Reimbursed for Fees for Service of Subpoenas

Saba contends the costs Unisys seeks for fees Unisys incurred for service of subpoenas are not allowable because: (1) fees for the use private process servers are not taxable, and (2) the subpoenas were not "necessary."  Saba Opp., p. 3.  Saba is wrong.

##### a.     Private Process Servers' Fees Are Taxable In The Ninth Circuit

Citing to a source called "E.D. VA Guidelines" and a case from the Eastern District of Virginia, *U.S. ex rel. Davis v. U.S. Training Ctr., Inc.*, 829 F.Supp. 2d 329 (E.D. Va. 2011), Saba leaps to the conclusion that "Federal courts across the nation have made it clear that the use of private process servers is not taxable."  Saba Opp., p. 3.

Saba's contentions wholly lack merit.  First, Saba fails to state which "Guidelines" he is referring, and how either this Court or Unisys can access these "Guidelines."  Second, *U.S. ex rel. Davis* is distinguishable.  The Eastern District of Virginia decided *U.S. ex rel. Davis* based on the policy of that district to disallow reimbursement for service costs by private process servers.  *U.S. ex rel. Davis*, 829 F. Supp. 2d at 331-32.  In contrast, the Ninth Circuit has held in no uncertain terms that private process servers' fees are properly taxed as costs.  Indeed, in *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990) the Ninth Circuit held that "private process servers' fees are properly taxed as costs."  *See also* 28 U.S.C. Section 1920(1); Local Rule 54-3(2).  The Ninth Circuit reasoned that now that the U.S. Marshal no longer has the responsibility to effect service of subpoenas, "a private party must be employed as process

server;" thus, the cost of private process servers is taxable. *Alflex Corp.*, 914 F.2d at 178. Therefore, Saba's claim that Unisys' process servers' costs are not taxable lacks merit and has been squarely refuted by Ninth Circuit precedent.

    b. **Unisys' Subpoenas Were Necessary and Proper**

  Saba claims Unisys' subpoena to Aetna, the City of Minneapolis, and Unisys' attempted service of subpoenas on Saba's two "wives" should not be taxed, in part, because he claims the subpoenas were not "necessary." His argument fails for multiple reasons.

  First, Saba objects to Unisys' subpoena to Aetna because the "Court did not allow the subpoena" and the subpoena was purportedly "improper, overbearing, challenged and not used." Saba Opp., p. 3. Saba is wrong once again. While Saba did challenge the subpoena to Aetna, Magistrate Judge Ryu ultimately ruled that Unisys could issue its subpoena to Aetna and set forth a procedure by which Saba's former attorney could review documents he objected to, produce those documents he had not objections to, and produce a privilege log. Dkt. 90. Specifically, on May 21, 2015, Judge Ryu held:

> Aetna shall produce all responsive documents from 5/1/08 to the present to Plaintiff's counsel, and the parties shall follow the same procedure as that used for medical records for Plaintiff's family (described in the joint letter at p. 8). Plaintiff's counsel shall perform an expeditious review of the documents pursuant to this procedure, and Plaintiff shall produce a detailed log listing all records withheld from production. The parties shall meet and confer regarding any disputes about withheld records and present any disputes in accordance with the court's Standing Order. *Id*.

Obviously, if the subpoena to Aetna was "improper" or "overbearing," Judge Ryu would not have allowed Unisys to issue the subpoena to Aetna. Further, the documents subpoenaed from Aetna were entirely relevant. Discovery as to Saba's medical history was relevant to Saba's stand-alone claim for intentional infliction of emotional distress. The Aetna documents were also directly relevant to whether Saba's purported first "wife", Parvaneh Alquero, had received treatment for cancer because his California Family Rights Act ("CFRA") retaliation claim was premised upon his allegation that he needed a leave of absence to assist with Alquero's cancer treatment (i.e., a family member's serious health condition).

  Saba's argument that the documents subpoenaed from Aetna were not "used" is the type

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

of specious claim that epitomizes Saba's communications to Unisys and this Court. Specifically, Saba fails to inform the Court that Aetna produced the documents to his former attorney, Charles Wisch, but despite repeated requests from Unisys' counsel, Mr. Wisch *never produced any documents from Aetna to Unisys*, in violation of Magistrate Judge Ryu's express order. Meckley Supp. Decl. ¶ 5, Ex. F.[1] How can Unisys "use" documents that Plaintiff refused to produce?

Second, Saba's objections to the costs Unisys incurred in connection with the subpoena to the City of Minneapolis lack merit. Saba argues that the "subpoena on the City of Minneapolis Police Department ($348.25) does not identify what was actually produced and the purpose of this production." Saba both misstates the standard and mischaracterizes the facts. Unisys produced all of the documents subpoenaed from the City of Minneapolis to Saba's counsel – he knew exactly what was obtained via the subpoena. Meckley Supp. Decl., ¶ 2, Ex. C. Unisys had to subpoena the City of Minneapolis because it had requested that Saba produce all of the background check materials he submitted and his correspondence/communications with the City, but he failed to do so. *Id*. The documents subpoenaed from the City of Minneapolis were directly relevant—indeed, critical—to to Unisys' defense that Saba had failed to complete the background check, was barred from working for his team's largest client, and thus legitimate non-retaliatory reasons existed for his layoff. Unisys produced the invoice reflecting the charges Unisys incurred in connection with the subpoena to the City of Minneapolis, and Unisys need not list the documents produced in its Bill of Costs.

Third, Saba disputes the charges Unisys incurred in attempting service of process of deposition subpoenas on his two "wives", Chih Lin and Parvaneh Alquero. Saba argues that Lin would have "been more than happy to make herself available" had Unisys requested a meeting through Wisch, Saba's former attorney, and that Unisys could have simply followed "simple procedures that call for proper noticing of subpoenas and deposition." Saba Opp., p. 3.

Saba's suggestion that both women would have readily submitted to depositions is

---

[1] Unisys' counsel requested, in writing, on June 29, July 6 and July 9, 2015 that Mr. Wisch produce the Aetna documents. Meckley Supp. Decl. ¶ 5, Ex. F. On July 6, Mr. Wisch made the ambiguous statement that the documents would be produced "in due course" and refused to "commit" to provide them by any deadline. *Id*. They have never been produced to Unisys.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

absolute hogwash. Throughout this litigation, Unisys repeatedly attempted to obtain various documents from Saba that he claimed were in the possession of Lin and/or Alquero. During the meet and confer process, Unisys requested that Saba obtain those documents from Lin and Alquero. Yet each woman *refused* to cooperate with the simple request of providing documents. This is evidenced by the April 19, 2015 email from Mr. Wisch wherein he stated:

> The Mexican documentation of Saba's solemnization of his common law marriage with Parvaneh Alquero (Unisys RFP 61) -- I advised that I would let you know by Monday the status of Saba's efforts to obtain that documentation from Alquero if she has it. ***I can now confirm that, despite efforts by Saba to communicate with Alquero, she refuses to cooperate with him***.

> The marriage certificate with Chih Lin (Unisys RFP 62) -- We continue to object on the grounds stated in the response. However, I advised that I would let you know by Monday the status of Saba's efforts to obtain that documentation from Lin if she has it. ***I can now confirm that, despite efforts by Saba, Ms. Lin refuses to participate in anything to do with this lawsuit, including providing documentation.***

*See* Meckley Supp. Decl. ¶ 9, Ex. I.

Saba's statement to this Court that Lin would have "been more than happy to make herself available" for deposition is not only flatly contradicted by Mr. Wisch's representation that Lin "refuses to participate in anything to do with this lawsuit", but represents the type of egregious and purposeful misrepresentation that warrants this Court imposing sanctions on Saba. In addition, in his deposition, Saba testified that he had had no contact with Alquero following her alleged request that he accompany her to the Philippines in May 2013. Dkt. 87-1, p. 68 (Pl. Depo. at 321:9-13).

Unisys needed to serve subpoenas on Lin and Alquero to get their testimony, and had to make efforts to find them. Indeed, Saba himself refused to provide his home address throughout the course of this year-and-a-half litigation. When Unisys sought to obtain Saba's W-2 forms to determine whether Saba resided in California during the time period at issue, Saba objected to the disclosure of his home address, making it impossible for Unisys to determine Saba's wives' whereabouts. Meckley Supp. Decl. ¶ 8. It was not until Saba sought to represent himself that Saba disclosed an address. *Id*. Because Saba refused to provide Unisys the requested

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

9

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

1  information, Saba forced Unisys' process server to unsuccessfully attempt service at multiple
2  addresses.  Unisys also believes the women were dodging service.  In fact, during one attempt,
3  the process server informed Unisys that while attempting service on Lin, a man believed to be
4  Saba angrily tried to intercept the subpoena and obstructed service.  Meckley Supp. Decl. ¶ 3, Ex.
5  D.
6         Saba argues that subpoenaing his "wives" was unnecessary.  Yet, how else was Unisys to
7  determine who Saba was legally married to, whether his first wife had cancer, and whether Saba
8  was entitled to a leave of absence based Alquero's alleged cancer?  If Unisys had not attempted to
9  serve Saba's two wives, Saba undoubtedly would have argued that Unisys should be precluded
10 from calling these women as witnesses at trial.  In short, Unisys made a good faith effort to obtain
11 the home address(es) of Saba's two wives, but because Saba failed to provide their address(es),
12 Unisys had to incur process server fees in order to track Saba's wives down.  These costs are
13 recoverable and should be taxed.

### 2. Unisys Should be Reimbursed for Transcript and Videotaping Costs

15 Saba claims that: (1) Unisys is not entitled to costs associated with videotaped
16 depositions; (2) that Unisys allegedly has not properly itemized the deposition costs; and (3) that
17 Unisys is not entitled to expedited service fees.  Saba's contentions wholly lack merit.
18        First, courts in the Northern District have held that costs associated with *both* videotaping
19 and written transcripts are recoverable.  Indeed, "a sensible reading of [Rule 54-3(c)(1) is that it]
20 covers the cost of videotaping and the cost incurred by the court reporter associated with
21 obtaining a stenographic transcription of a deposition, as well as the cost of one copy of the
22 videotape and of the written transcript." *MEMC Elec. Materials v. Mitsubishi Materials,* No. C
23 01-4925 SBA (JCS), 2004 WL 5361246 *3 (N.D. Cal. 2004) (awarding costs for both the
24 videotaping and transcribing of depositions); *see also Hynix Semiconductor, Inc. v. Rambus Inc.,*
25 697 F.Supp. 2d 1139, 1150 (N.D. Cal. 2010) ("The cost of videotaping, including video
26 technician fees, as well as the cost of the videotape and written transcript are taxable costs.").
27        The transcripts requested by Unisys, including the videotaped copy of the depositions,
28 were reasonable and necessary costs, because the value for impeachment purposes at trial

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS


(assuming all witnesses were able to testify at trial) in a case such as the present one is paramount. *ASIS Internet Servs. v. Optin Glob., Inc.*, C-05-5124 JCS, 2008 WL 5245931 (N.D. Cal. Dec. 17, 2008) *aff'd sub nom. ASIS Internet Servs. v. Azoogle.com, Inc.*, 357 F.Appx 112 (9th Cir. 2009) (rejecting plaintiff's assertion that "videotaping costs should be excluded because they were not necessarily obtained for use in the case. Had the case gone to trial, the deposition transcripts may well have had value for impeachment purposes, even if the witnesses were available to testify.") (*citing Indp. Iron Works, Inc., v. U.S. Steal Corp.*, 322 F.2d 656, 678–79 (9th Cir.1963)). Indeed, *Zopatti v. Rancho Dorado Homeowners Ass'n*, No. 10CV1091 DMS WVG, 2012 WL 92338, *3 (S.D. Cal. Jan. 10, 2012), on which Saba relies, held that that "[d]epositions need not be introduced in evidence or used at trial to be taxable so long as at the time it was taken it could reasonably be expected that the deposition would be used for trial, rather than mere discovery."

Saba's claim that it was unnecessary for Unisys to videotape its depositions is undermined by the fact that **Saba's former counsel Mr. Wisch videotaped each and every deposition that he took in this case!** Clearly, the parties needed to be on equal footing and permitted with equal opportunity to present videotaped testimony at trial. Saba cannot expect to have an advantage in this regard yet avoid having to pay Unisys' videotaping costs simply because he now disagrees with this Court's ruling on Unisys' motion for summary judgment.

Second, Saba claims that Unisys allegedly did not properly itemize deposition costs based on *Zopatti*, a case from the Southern District. His argument fails. Unisys fully satisfied the requirements of Northern District Local Rule 54-1(a), which states that the cost bill

> must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit, pursuant to 28 U.S.C. §1924, that the costs are correctly stated, were necessarily incurred, and are allowable by law. Appropriate documentation to support each item claimed must be attached to the bill of costs.

Here, Unisys complied with the requirements of Local Rule 54-1(a). Unlike the defendant in *Zopatti*, which was subject to different local rules in the Southern District, Unisys submitted invoices for each and every deposition which provides a line item breakdown of the costs incurred for each deposition. Further, unlike the present case, in *Zopatti* the defendants failed to

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

provide any explanation for the disproportionate expense of the depositions of two doctors, which the court found appeared to be disproportionately high in comparison with other depositions. Unlike *Zopatti*, the deposition transcript and videotaping costs for Saba's first day of deposition were more than any other deposition, both because of the length of the deposition and because Saba's deposition was videotaped. As set forth above, such videotaping costs are fully taxable.

Third, Saba claims Unisys is not entitled to expedited service fees because "several Courts including in the District of Nevada, District of Louisiana and the Southern District of California" have, according to Saba, "interpreting guidelines into local rules such as Civil Local Rule 54.1(b)(1)," which Saba claims provides fees for expedited services fees are allowable only if the Court orders service be effected on an expedited basis. However, there is no such Local Rule in the Northern District. The only possibly relevant rule, Local Rule 54-1(b), simply states: "Effect of Service. Service of bill of costs shall constitute notice pursuant to Fed. R. Civ. P. 54(d), of a request for taxation of costs by the Clerk." Significantly, courts in the Northern District have held that expedited service and other fees are taxable. For instance, in *Serv. Employees Int'l Union v. Rosselli*, No. C 09-00404 WHA, 2010 WL 4502176, at *3 (N.D. Cal. Nov. 1, 2010) the court rejected similar arguments made by defendants objecting a cost bill that included expedited (and other) fees for deposition costs in excess of $120,000. The court stated:

> Finally, defendants object to costs stated by plaintiffs in the "other costs" category. First, defendants object to fees related to depositions. They object to a list of items all found on court reporter invoices, among other charges: "rough disk" fees, "expedited" services charges, parking reimbursements, charges for court reporter "waiting time," charges for court reporter "before/after hours," delivery costs, appearance and travel fees, "video digitizing to DVD[s]," and "video synchronizing." All of the costs named by defendants are fees charged by court reporters. They are therefore compensable as reasonably necessary for trial. *See Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir.1998). Defendants' objections are overruled. Plaintiffs are entitled to their deposition costs of $122,610.74.

*Serv. Employees Int'l Union,* 2010 WL 4502176 at *3.

The court in *Serv. Employees Int'l Union* did not analyze whether the court had ordered such expedited costs. The costs were simply necessary for trial. Nevertheless, the expedited service fees incurred in this action were necessary. For example, it was necessary for Unisys to obtain copies of the transcripts of the depositions of Helen Baker, Rachael Hartzler, and John

1 Buckner on an expedited basis to assess Saba's claims given the parties' mediation with a Court-
2 appointed mediator was scheduled for February 4, 2015. In addition, the discovery cutoff at that
3 time was February 18, 2015, and thus, Unisys needed to determine whether additional discovery
4 was needed. Dkt. 19. Further, Unisys required the transcripts on an expedited basis given the
5 then-deadline of March 25, 2015 for the court to hear dispositive motions. *Id*. It was also
6 necessary to expedite the deposition transcripts of Gary Green, the second day of Saba's
7 deposition, Glynnis Davis and Ana Wang given the parties' May 20, 2015 deadline to file their
8 dispositive motions. Dkt. 51. Expediting the transcripts of Saba's retained experts was
9 particularly important given the parties' limited time to conduct expert discovery and the need for
10 Unisys' retained experts to review Saba's experts' testimony prior to their own depositions being
11 taken.

12 Because the deposition costs Unisys incurred were necessary and have been properly
13 documented, the Court should tax the full amount Unisys seeks for deposition costs.

### 3. Unisys Should be Reimbursed for Witness Travel Fees

15 Saba claims that John Bucker's travel to Minneapolis from Florida for his deposition and
16 Bucker's lodging expenses should not be taxed. Saba's contentions lack merit. Local Rule 54(e)
17 expressly provides: "Per diem, subsistence and mileage payments for witnesses are allowable to
18 the extent reasonably necessary and provided for by 28 U.S.C. § 1821." *See* also *ASIS Internet*
19 *Servs. v. Optin Glob., Inc.*, No. C-05-5124 JCS, 2008 WL 5245931, at *4 (N.D. Cal. Dec. 17,
20 2008) *aff'd sub nom. ASIS Internet Servs. v. Azoogle.com, Inc.*, 357 F. App'x 112 (9th Cir. 2009)
21 ("It is well-established that so long as the cost of airfare is documented and the fare was the most
22 economical available, a prevailing party may recover these costs.").

23 Saba's contention that Bucker should have flown from Florida to Minneapolis the
24 morning of the deposition and returned that same evening is unrealistic and unreasonable and
25 fails to explain how Bucker's airfare would have been cheaper—in fact, such same day travel
26 most likely would have been far more expensive. The fact is that the parties mutually agreed that
27 Saba would conduct Bucker's deposition in Minneapolis to coincide with Saba's depositions of
28 two other witnesses, Helen Baker and Rachael Hartzler, who live in Minnesota. The parties

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

1  agreed that this arrangement was the most cost effective for Saba given that requiring Saba to
2  depose Buckner in Florida would have required counsel for both parties located in California to
3  travel to Florida, and thereby incur significant additional costs.  In short, it was in Saba's interests
4  to schedule Bucker's deposition in Minneapolis.  Further, Saba's objection to the subsistence
5  allowance of $71 lacks merit given that Unisys is entitled to tax a subsistence allowance in that
6  amount, which is the per diem rate for Minnesota set forth by the U.S. General Services
7  Administration.  *See* 29 U.S.C. 1821(d)(1)-(3).  Accordingly, Buckner's travel and lodging
8  expenses are taxable.

### 4.    Unisys Should be Reimbursed for Copying Costs

Saba objects to the copying costs Unisys incurred in reproducing exhibits for the depositions of Saba's retained experts, Ron Morrell and Charles R. Mahla, and reproduction costs for document productions to Saba.  Saba's cursory objections are without merit and should be overruled.

Prior to the depositions of Saba's experts, Morrell and Mahla, Unisys specifically requested that Saba's experts provide Unisys with copies of the documents Saba's experts intended to produce in connection with their depositions and that they do so before their respective depositions.  Saba's counsel refused to do so.  Meckley Supp. Decl. ¶ 6, Ex. G.  For example, in connection with Morrell's deposition, Saba's former counsel Mr. Wisch wrote to Unisys counsel, and stated:

> Mr. Morrell will not release possession of his original files to defense counsel or the court reporter.  Accordingly, while you will be free to mark whatever documents you wish, ***you will have to arrange for a copy service to pick up whatever documents you mark and return them to Mr. Morrell on the same day they are picked up.  I am confident that you will have no trouble locating a copy service in Campbell or San Jose that can accommodate that requirement***.  *Id.*

Unisys would have preferred for the witness to simply make copies.  But no – Unisys was forced by Mr. Wisch to make complicated arrangements for an outside service to make copies of the documents Saba's experts produced at deposition the day of each expert's deposition. Meckley Supp. Decl. ¶ 6.  In addition, the copy service reproduced the documents exactly as Saba's experts produced them – in color – and thus color copies were proper.  *Id.*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

Saba's objections to the costs Unisys incurred in copying documents produced to Saba in discovery also lack merit. Saba fails to address the fact that costs of making copies of any materials where the copies are necessarily obtained for use in the case are taxable pursuant to 28 U.S.C. § 1920(4). Indeed, Civil Local Rule 54-3(d)(2) allows for recovery of "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case." *See also Marbled Murrelet v. Babbitt*, No. C 95-3261 LCB, 1999 WL 193387, at *7 (N.D. Cal. Apr. 5, 1999) aff'd, 182 F.3d 1091 (9th Cir. 1999) (taxing copying costs incurred in responding to discovery). Unisys provided a detailed breakdown of the Bates ranges for each document production, which Saba does not dispute he received. Unisys produced a total of 1,708 pages in hard copy format at a cost of $0.10 per page (the rate charged by defense counsel for copies in-house), for a total of $170.80. Therefore, the copying costs Unisys incurred in reproducing deposition exhibits and replicating document productions should be taxed.

### E. The Court Should Not Defer Ruling on Defendants' Bill of Costs Pending Appeal

In determining whether to issue a stay on taxation of costs pending appeal, courts consider the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Kilopass Tech. Inc. v. Sidense Corp.*, C 10-02066 SI, 2013 WL 843104 *5 (N.D. Cal. Mar. 6, 2013) (recognizing defendant's interest in the immediate payment for its taxable costs and denying motion to stay the taxation of costs pending appeal).

Here, although Saba has filed a notice of appeal, he has not requested that imposition of costs be stayed. Even if he had, however, the *Hilton* factors do not support a stay or deferral. First, Saba is not likely to succeed on the merits of his appeal because the record indicates that there was no evidence Unisys wrongfully terminated or retaliated against Saba. That is why the Court granted Summary Judgment on each of his claims. Second, Saba will not be irreparably injured absent a stay because he has not established that the payment of these costs over time

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

Case No. 3:14-cv-01310-WHO
RESPONSE TO PLAINTIFF'S OBJECTIONS
TO BILL OF COSTS

1 would render him indigent. Third, a stay would unnecessarily delay these proceedings and result in further unnecessary costs to Unisys. Fourth, there is simply no basis to conclude that the public or any third-parties, other than Saba, would be served by the stay. Taken as a whole, the *Hilton* factors weigh against a stay pending appeal. Furthermore, if Saba's intent was to defer and stay this matter, he should have filed a motion to stay with the Court. Saba did not do so.

### III. CONCLUSION

Unisys requests that the Court overrule Saba's objections in their entirety and grant Unisys' Bill of Costs in full, as set forth above.

Dated: August 18, 2015                    MORGAN, LEWIS & BOCKIUS LLP

By  */S/ Eric Meckley*
Eric Meckley
Attorneys for Defendant
UNISYS CORPORATION

DB2/ 26234351.1